FOR PUBLICATION

UNITED STATES BANKRUPTCYCOURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                          :         Chapter 7

In re:                                 :         Case No. 07-35638 (cgm)
                                            :

    MOUNTAIN DAIRIES, INC.,      :
                                            :

                    Alleged Debtor.     :
                                          :
------------------------------------------------------------X

## MEMORANDUM DECISION ON DISMISSAL OF INVOLUNTARY PETITION

**A P P E A R A N C E S :**

Andrew J. Romanow, Esq.
Brian H. Simmons, Esq.
Buchanan Ingersoll & Rooney, PC
268 Main Street
Buffalo, New York
*Attorneys for Schneider-Valley Farms, Inc.*

Michael L. Carey, Esq.
Jacobowitz & Gubits, LLP
158 Orange Avenue
Walden, New York
*Attorneys for Mountain Dairies, Inc.*

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

       This matter arises from an involuntary petition filed against Mountain Dairies, Inc.

("Mountain Dairies") by a single petitioning creditor, Schneider-Valley Farms, Inc. ("Schneider-

Valley"). Mountain Dairies timely opposed entry of an order for relief, and the Court conducted

an evidentiary hearing on June 27, 2007. For the reasons set forth below, the Court ruled that

Schneider-Valley was an ineligible petitioning creditor pursuant to 11 U.S.C. § 303(b)(1)

because Schneider-Valley is not the holder of a claim "that is not … the subject of a bona fide

dispute as to liability or amount."  Accordingly, the Court dismissed the involuntary petition and

ruled that costs and attorneys' fees would be awarded against Schneider-Valley and in favor of

Mountain Dairies pursuant to 11 U.S.C. § 303(i).

## JURISDICTION

This Court has subject matter jurisdiction over this contested matter pursuant to 28

U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Acting

Chief Judge Robert J. Ward dated July 10, 1984.  The determination of whether an order for

relief should be granted in an involuntary case is a core proceeding pursuant to 28 U.S.C. §

157(b)(2)(A) (matters concerning administration of the estate).

## BACKGROUND[1]

Schneider-Valley filed this involuntary petition on May 4, 2007.  The involuntary petition

was signed by David T. Schneider as Vice President of Schneider-Valley.  According to the

petition, Schneider-Valley's claim arose from a breach of contract, and Schneider-Valley

indicated that the amount of its claim was $1,148,333.36. Electronic Case Filing ("ECF") Docket

No. 1.

Mountain Dairies filed an answer on May 29, 2007. ECF Docket No. 5.  In its answer,

Mountain Dairies alleged: "The sole petitioning creditor, Schneider-Valley Farms, Inc. is not

eligible to file this Petition pursuant to 11 U.S.C. §303(b) as its claim is subject to a bona[]fide

dispute as to liability or amount." ECF Docket No. 5, ¶2.  On June 12, 2007, Mountain Dairies

submitted several documents in support of dismissal of the involuntary petition, including the

"Affidavit of Andrew Wohl in Support of Dismissal of the Involuntary Petition" (ECF Docket

---

[1]        Unless otherwise noted, the following discussion constitutes the Court's findings of facts and conclusions
of law pursuant to Fed. R. Bankr. P. 7052.

No. 10; the "Wohl Affidavit") and exhibits thereto (ECF Docket No. 12), and a Memorandum of Law (ECF Docket No. 11).

A hearing to consider the involuntary petition and answer was first held on June 19, 2007. Mountain Dairies averred to the fact that it was not a farmer,[2] that there were fewer than twelve creditors, and that Mountain Dairies was generally not paying debts as they came due (as discussed below, all are requirements for commencement of an involuntary petition or entry of an order for relief).

Mountain Dairies' Answer raised an issue as to whether Schneider-Valley's claim met the threshold requirement for commencing an involuntary case as "not contingent as to liability or the subject of a bona fide dispute as to liability or amount." 11 U.S.C. § 303(b)(1). An evidentiary hearing was held June 27, 2007 pursuant to 11 U.S.C. § 303(h) to consider whether an order for relief should be entered. In advance of the evidentiary hearing, Schneider-Valley filed a Response to Mountain Dairies' Memorandum of Law (ECF Docket No. 15), and both parties filed supplemental briefs (ECF Docket Nos. 16, 18).

At the evidentiary hearing, Schneider-Valley presented 12 exhibits and testimony from two witnesses.[3] The first witness, Schneider-Valley's Vice-President of Finance David Paul Schneider, is the same David T. Schneider who signed Schneider-Valley's involuntary petition.[4]

---

[2]   11 U.S.C. §101 provides the following definitions:

  (20) The term "farmer" means (except when such term appears in the term "family farmer") person that received more than 80 percent of such person's gross income during the taxable year of such person immediately preceding the taxable year of such person during which the case under this title concerning such person was commenced from a farming operation owned or operated by such person.
  (21) The term "farming operation" includes farming, tillage of the soil, dairy farming, ranching, production or raising of crops, poultry, or livestock, and production of poultry or livestock products in an unmanufactured state. 11 U.S.C. §101.

[3]   Andrew Wohl was prepared to testify on behalf of Mountain Dairies, but as discussed below, the Court dismissed the involuntary petition at the conclusion of Schneider-Valley's case in chief.

[4]   No testimony was offered as to the differing middle initial.

Transcript of June 27, 2007 hearing ("Tr."), p. 23, 72.  The second witness was Sharon Lee

Benturini, the assistant comptroller of Schneider-Valley Farms Dairy ("Schneider-Dairy"), an

entity related to Schneider-Valley. Tr. at 84.

The testimony and exhibits revealed that Schneider-Valley's claim is based upon an

alleged breach of contract in which Mountain Dairies agreed to purchase milk and related

products from Schneider-Valley. Schneider-Valley Trial Exh. ("Exh.") 1; Tr. at 6-7.  The

agreement is based on the January 25, 2000 Dealer Supply Agreement (the "Dealer Supply

Agreement"). Tr. at 32; Exh. 1.  Parties to the Dealer Supply Agreement included Schneider-

Valley, Mountain Dairies, and another entity Star Dairy, Inc. ("Star Dairy"). Exh. 1.  Star Dairy

shared the 88 Rock Hill business address and certain employees with Mountain Dairies. Tr. at

28.  Star Dairy allegedly did business as White's Dairy ("White's Dairy"). Tr. at 25.[5]  In the

Dealer Supply Agreement, Schneider-Valley agreed to act as the supplier to Mountain Dairies

and Star Dairy, defined collectively as "Dealer." Exh. 1.  While the Dealer Supply Agreement

does not explicitly name White's Dairy as a party, Schneider-Valley agreed to make deliveries to

"Dealer" at various locations, including to Mountain Dairies six times a week, and to White's

Dairy and Star Dairy three times each per week. Exh. 1, ¶5(a)-(c).

The Dealer Supply Agreement expired on January 31, 2005, after Schneider-Valley and

Mountain Dairies failed to negotiate terms for a new written agreement. Exh. 1, ¶, 4; Tr. at 36,

32.  According to Mr. Schneider's testimony, for the next two years the parties continued to

conduct business based on an oral agreement. Tr. at 32.

In 2006, Schneider-Valley reported Mountain Dairies to the New York Department of

Agriculture for falling behind on payments. Tr. at 76.  On July 5, 2006, Schneider-Dairy placed

Mountain Dairies on a cash-on-delivery basis. Tr. at 77-78; Exh. 11.  A July 21, 2006 letter from

---

[5]    The name "White's Dairy" was transcribed as "Weitz Dairy".

the New York Department of Agriculture and Markets reflects that Schneider-Valley and

Schneider-Dairy reported a "significant past due balance for milk." Exh. 11.  The July 21, 2006

letter required Mountain Dairies, Schneider-Valley and Schneider-Dairy to provide

documentation within ten days of the date of the letter. Exh. 11.

Though the relationship had apparently soured, the parties continued to do business on a

cash-on-delivery basis for another nine months (Tr. at 28, 77), notwithstanding the fact that on

July 27, 2006, Schneider-Valley and Schneider-Dairy filed a complaint against Mountain Dairies

and White's Dairy in the Court of Common Pleas of Allegheny County, Pennsylvania. Exh. 2

(the "Pennsylvania Action").  The complaint in the Pennsylvania Action alleged two counts for

"breach of oral contract(s)" and demanded damages of $1.16 million and $201,000, respectively.

Exh. 2, ¶¶ 45, 48.  The Pennsylvania Action did not differentiate between Mountain Dairies and

White's Dairy or provide any breakdown of the separate amounts owed by each; rather,

Schneider-Valley sought judgment against them "jointly and severally." Exh. 2.  The complaint

alleged that Mountain Dairies and White's Dairy shared a principal place of business and were

"[b]ased upon reasonable information and belief … both owned and/or controlled by Andrew G.

Wohl." Exh. 2, ¶4-5.  The complaint did not allege that the two entities had failed to observe

corporate formalities.  In one paragraph of the complaint, Schneider-Valley recites that it acted

"in reliance upon an oral agreement by Mr. Wohl to pay off his companies' arrearages with

interest accruing at 1½ % monthly or 18% annually…." Exh. 2, ¶26 (emphasis added).  Mr.

Wohl was not named as a defendant in the Pennsylvania Action.

Mountain Dairies filed a preliminary objection to the Pennsylvania Action, denying the

existence of the oral contracts (except as an agreement to continue under the terms of the Dealer

Supply Agreement), and contested the court's jurisdiction based on a forum selection clause in

the Dealer Supply Agreement, which states:

> If a dispute should arise between the parties hereto, the Supreme Court of the
> State of New York, in and for the County of Sullivan, is hereby designated as the
> place of venue if any litigation occurs between the parties. The parties do hereby
> consent and agree to submit and do hereby submit themselves to the jurisdiction
> of the Supreme Court of the State of New York venued as aforesaid and consent
> to service of process upon them by any means authorized under the laws of the
> State of New York.

Exh. 1, ¶15. On February 9, 2007, the Court of Common Pleas of Allegheny County,

Pennsylvania (Friedman, J.) ruled as follows:

> The testimony of Andrew Wohl was taken by telephone deposition. This is the
> only evidence related to the jurisdictional question. The gist of Mr. Wohl's
> testimony on the question of the written contract between the parties was that all
> names used by both sides were used interchangeably and that the written contract
> covered all transactions between Plaintiffs' various entities and Defendants'
> various entities regardless of which name was used at any given time.[6]

> Since there is no evidence of record that would contradict this testimony and,
> given that the allegations regarding the "oral" contracts are somewhat contrived,
> appearing rather to be an attempt to avoid the forum the parties selected in the
> written contract, the jurisdictional objection is sustained, and the Complaint filed
> here in Pennsylvania is dismissed without prejudice to Plaintiffs' right to
> prosecute its claims against Defendants in Sullivan County in the State of New
> York.

ECF Docket No. 12, Exh. B, p. 2. Upon dismissal of the Pennsylvania Action, Schneider-Valley

filed the involuntary petition in this Court, rather than commencing an action in state court in

Sullivan County. Tr. at 15. After dismissal of the Pennsylvania Action, the parties continued to

conduct business through April 21, 2007, less than two weeks prior to the filing of this

involuntary petition. Tr. at 28. Mr. Schneider testified that on April 21, 2007 Mountain Dairies

---

[6]     The Pennsylvania court appeared to be dealing only with the "jurisdictional question" and the parties'
connections to that forum. The decision does not cite to specific testimony in Mr. Wohl's deposition, but this Court
notes that Mr. Wohl testified that he made no distinction between the Schneider entities at the time the Dealer
Supply Agreement was negotiated. Exh. 11, p. 9-10. As for billing and placement of orders, Mr. Wohl answered: "I
don't know the difference between Schneider-Valley Farms, Inc. or Schneider's Inc. that you're referring to" and
did not know which Schneider entity received the orders. Exh. 11, p. 69-70. On the other hand, Mr. Wohl testified
that the bills would be paid by separate checks, and that Mountain Dairies issued checks for its purchases, but never
on behalf of White's Dairy. Exh. 11, p. 10, 39.

informed Schneider-Valley that it would no longer place any orders and that Mountain Dairies

had been sold. Tr. at 60.  While there is no record of the sale, Heinchon-Marcus Distributors

("Heinchon-Marcus") appears to have taken over Mountain Dairies' operations, conducting

business from the same address as Mountain Dairies. Tr. at 61; Exh. 12.  Mountain Dairies

apparently lost its milk license on April 30, 2007 and ceased operating. Tr. at 14, 74.  Mountain

Dairies' principal Andrew Wohl now acts as manager for Heinchon-Marcus, and Heinchon-

Marcus retained at least some of Mountain-Dairies' customers and employees. Tr. at 61-62, 86.

Schneider-Valley currently does business with Heinchon-Marcus to distribute products to the

same customers formerly supplied by Mountain Dairies, but on different terms. Tr. at 62-64.

In its motion to dismiss, Mountain Dairies asserted, among other things:

The disputes as to the liability and amounts include but are not limited to the
following:

A. Petitioner charged Mountain Dairies, Inc. interest charges at the rate of
18% which was not provided for in the contract.

B. Failure of the Petitioning Creditor to adjust the price of product from
delivered product price to picked-up product price.

C. Failure to provide credits for bad product.

D. Schneider Valley Farms, Inc. inflated the amount of arrears allegedly owed
by Mountain Dairies, Inc. to Schneider Valley Farms, Inc.

Mountain Dairies, Inc., has other claims against Schneider-Valley Farms, Inc.
Schneider-Valley Farms, Inc. failed to use the packaging for the packaging of the
milk products specifically used for Mountain Dairies, Inc. Schneider-Valley
Farms claimed in their complaint in Pennsylvania to have over $50,000.00 worth
of milk cartons and labels previously purchased by Schneider Dairies on behalf of
Mountain Dairies. Rather than use Mountain Dairies' cartons and labels, the milk
products would be labeled under the Schneider-Valley Farms brand. Mountain
Dairies, Inc. was forced to purchase and use this product in the Schneider-Valley
Farms brand which enabled Schneider-Valley Farms to obtain access to the
Mountain Dairies, Inc.'s customers and damage the label that was used by
Mountain Dairies, Inc. This also established Schneider-Valley Farms' brand name
with Mountain Dairies' customer base.

Wohl Affidavit, ¶¶9-10.

## DISCUSSION

**I.**    **Dismissal**

As determined at the preliminary hearing, Mountain Dairies is not statutorily shielded

from an involuntary petition.  The current law prohibits involuntary petitions against farmers.  11

U.S.C. §303.  "An involuntary case may be commenced only under chapter 7 or 11 … and only

against a person, <u>except a farmer</u>, family farmer, or a corporation that is not a moneyed,

business, or commercial corporation, that may be a debtor under the chapter under which such

case is commenced."  11 U.S.C. §303 (emphasis added).  At first glance, the name "Mountain

Dairies, Inc." might suggest a dairy farm.  Mountain Dairies, however, conceded that it was not a

farmer at the June 19 hearing.  The Court can therefore proceed to the issue of whether

Schneider-Valley was eligible to file an involuntary petition against Mountain Dairies under 11

U.S.C. §303.

A sole petitioning creditor may proceed under 11 U.S.C. §303(b) only if all four of the

following elements are satisfied: (i) the petitioning claimholder's claim must not be "contingent

as to liability or the subject of a bona fide dispute as to liability or amount," (ii) the petitioning

creditor's claim must be at least $13,475, (iii) the alleged debtor has fewer than 12 claimholders

(not counting insiders, employees, transferees of voidable transfers, and holders of contingent or

disputed claims), and (iv) the alleged debtor is generally not paying its debts as they come due.

*See In re Euro-American Lodging Corp.*, 357 B.R. 700, 711-712 (Bankr. S.D.N.Y. 2007); *In re*

*Amanat,* 321 B.R. 30, 35 (Bankr. S.D.N.Y. 2005).  Section 303(h)(1) provides that where, as

here, an involuntary petition has been timely opposed by the alleged debtor, then "after trial, the

court shall order relief against the debtor in an involuntary case … <u>only if</u> – (1) the debtor is

generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount[.]" 11 U.S.C. § 303(h) (emphasis added).

At issue here is whether Schneider-Valley meets the threshold requirement of having a claim that is not "contingent as to liability or the subject of a *bona fide* dispute as to liability or amount." 11 U.S.C. § 303(b)(1).

> Any creditor wishing to invoke the bankruptcy court's jurisdiction in an involuntary case should be required to demonstrate at the earliest practicable point that its petition satisfies this requirement. Otherwise, creditors could, on the basis of relatively untested claims, haul a solvent debtor with whom they have legitimate disputes into bankruptcy court and force it to defend an involuntary proceeding while the bankruptcy court leaves for a later merits determination whether the debtor is even properly before it.

*Key Mechanical, Inc. v. BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d 111, 118-19 (2d Cir. 2003).

At the conclusion of Schneider-Valley's testimony at the evidentiary hearing, the Court dismissed the involuntary petition without taking evidence from Mountain Dairies. In the Court's view, Schneider-Valley failed to make a *prima facie* showing that it held a claim that was not the subject of a bona-fide dispute and thus did not meet its burden of proof as the petitioning creditor.

The June 27, 2007 evidentiary hearing revealed significant open disputes between the parties, and Schneider-Valley admitted that a substantial portion of its claim, as filed, was disputed. By its own admission, Schneider-Valley filed a disputed claim:

| | |
|---|---|
| THE COURT: | So you say that there's – you came in here with $1.148 million and – |
| MR. SIMMONS: | And based upon – |
| THE COURT: | – and you say that's exactly what the other side would say they owe you, $1,148,333.36? |
| MR. SIMMONS: | We believe that is what we are owed, Your Honor. But they have raised a number of disputes. We are going to have to wipe those disputes clean, down to $855,000…. |

Tr. at 8.  Schneider-Valley then introduced Exh. 7, which purported to "subtract out" various

portions of its claim.  Exh. 7, captioned "TOTAL AMOUNT OWED TO SCHNEIDER-

VALLEY FARMS, INC. AFTER SUBTRACTING OUT ALLEGED DISPUTED AMOUNTS

RAISED BY MOUNTAIN DAIRIES, INC.," set forth the following:

| | |
|---|---|
| Amount Set Forth In Petition | $1,148,333.36 |
| Subtract Out Moneys Owed By Mountain Dairies to Schneider's Dairy | ($25,870.79) |
| Subtract Out Delivery Credit | ($144,532.00) |
| Subtract Out 1% Automatic Discount For Bad Product | ($92,869.97) |
| Total Amount Owed | $885,060.70 |

The $25,870.79 figure "subtracted out" in Exh. 7 was asserted in the involuntary petition by

Schneider-Valley on behalf of Schneider-Dairy, a separate entity that did not sign the involuntary

petition. Tr. at 48-49.  Next, Schneider-Valley referred the Court to Exh. 8, captioned "TOTAL

AMOUNT OF DAMAGES WAIVED BY SCHNEIDER-VALLEY FARMS, INC. IN LIGHT

OF ALLEGED DISPUTED AMOUNTS RAISED BY MOUNTAIN DAIRIES, INC."  Exh. 8

purported to waive $329,810.87 in interest, charged at an annual rate of 18%.  The 18% interest

rate had not been provided for in the Dealer Supply Agreement. Tr. at 4, 46. In Exhibit 8,

Schneider-Valley also "waived" a $99,870.57 fuel surcharge and a $16,361.38 charge for

"unused labels and containers."  The amounts Schneider-Valley purported to waive in Exh. 8

totaled $446,042.82.  The Court asked Mr. Schneider about Exhibit 8:

| | |
|---|---|
| THE COURT: | So this total of $446,042.82 is being subtracted from the $885,060.70? |
| MR. SCHNEIDER: | It is not.  It's just items that we have offered to waive. |
| THE COURT: | From the 1.148 million? |
| Mr. SCHNEIDER: | Well, in the 1.148 million, that was never applied in that number, nor was the fuel surcharge, nor was the amount of labels. |

Tr. at 52.  In an earlier pleading, Schneider-Valley contended: "Contrary to the assertion … of

Andrew Wohl …, Schneider-Valley did not make any claim for interest in the Involuntary

Petition. Response to Debtor's Supplemental Memorandum of Law, ECF Docket No. 18, p. 3 n.

1.  Schneider-Valley never made clear what impact the amounts it waived (or offered to waive)

in Exh. 8 would have on the status of the $1,148,333.36 asserted in the involuntary petition.  As

discussed below, Schneider-Valley never provided clear documentation of a sum certain that

would be due from Mountain Dairies after deducting the amounts in dispute.  Thus, it is still

unclear to the Court whether either the $885,060.70 Schneider-Valley asserted at the evidentiary

hearing, or the $1,148,333.36 demanded in the involuntary petition includes items that

Schneider-Valley waived in Exh. 8.

        In its preliminary statement at the evidentiary hearing, Schneider-Valley's counsel

claimed: "[W]e sold $855,000 of product to Mountain Dairies, which they have never paid for

and there is no bona[]fide dispute about.  They owe us that money." Tr. at 6.  Schneider-Valley

never managed to clarify how it calculated these amounts.  The evidence offered by Schneider-

Valley consisted of its own balance sheets and invoices regarding both Mountain Dairies and

Star Dairy. Exhs. 3-6.  The invoices were both for shipments to Mountain Dairies totaling

$610,617.67(Exhs. 3 and 4) and Star Dairy totaling either $511,844.90 (according to Exh. 5) or

$565,404.35 (according to Exh. 6).  These amounts total at least $1,122,462.57 and included

amounts that Schneider-Valley had "subtracted out" in Exh. 7 because they were disputed by

Mountain Dairies.  The following exchange occurred on the record between the Court and Mr.

Simmons, counsel for Mountain Dairies, regarding the invoices:

> THE COURT:         The last invoice I have [in Exh. 4, dated April 21,
>                    2007] has $610,617.67, and yet you said $850,000.
>                    Was there anything after this last invoice?

| MR. SIMMONS: | There is, Your Honor. We are going to be moving onto another set of invoices. And there is also an exhibit in here that we'll get to that describes how we got to the 855 figure. |
|---|---|
| | * * * |
| THE COURT: | I want you to be clear with something though, where you're going. Is it Star or [White's], or I mean Mountain Dairies? Is this combined or is this separate? |
| MR. SIMMONS: | There were two separate invoices, Your Honor. Both of them sent to the Mountain Dairy address. One for a Mountain Dairy account, the other for a Mountain Dairy-[White's] account. That's how we had it set up in our system. |

Tr. at 37-38. Thus, the amount asserted by Schneider-Valley on the involuntary petition, in addition to the amounts that it "subtracted out" in Exh. 7 and possibly the amounts "waived" in Exh. 8, also included an unspecified additional amount, as much as $565,404.35 that had been shipped to White's Dairy, a separate corporate entity. The Court later asked Mr. Schneider if he had a separate breakdown of the amounts due from White's Dairy as opposed to Schneider-Valley, given the amounts Schneider-Valley had subtracted out or waived. Tr. at 53. Mr. Schneider responded that he did not have that information. Tr. at 53. No evidence has been offered to show that Mountain Dairies should be liable for product that was shipped to White's Dairy or Star Dairy except testimony from Mr. Schneider that it was "always the parties' understanding that Mountain Dairies was responsible for the obligations of Mountain Dairy-[White's] Dairy." Tr. at 53-54.

Mr. Schneider testified that Mr. Wohl stopped paying on a timely basis under the Dealer Supply Agreement "about five, six years ago." Tr. at 31-32. Mr. Schneider testified to "a transaction in which Andrew [Wohl] asked us to help him complete by extending the terms that

are in the dealer supply agreement so that he could generate the funds in order to make that transaction occur." Tr. at 32. No documentary evidence of that transaction was offered.

The only testimony offered by Schneider-Valley regarding Mountain Dairies' alleged counterclaim was that it was "not an accurate portrayal" of the situation, and that Mr. Wohl had consented to Schneider-Valley's course of conduct. Tr. at 55-57.

Based on the foregoing, the Court finds that Schneider-Valley's claim is the subject of a bona fide dispute as to liability and amount. Because Schneider-Valley is the sole petitioning creditor, the involuntary petition must be dismissed pursuant to 11 U.S.C. § 303(b) and (h)(1).

Schneider-Valley argues that it properly filed this petition because Mountain Dairies' disputes are not "bona fide" pursuant to 11 U.S.C. §303. The Bankruptcy Code does not define the term "bona fide dispute," leaving the meaning open to judicial determination. *In re Biogenetic Technologies, Inc.*, 248 B.R. 852, 856 (Bankr. M.D. Fla. 1999).

> As originally enacted, § 303 did not exclude creditors' claims that were the subject of bona fide disputes. The language was added by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, § 426(b), 98 Stat. 333, 392 (1984). *See* 11 U.S.C.A. § 303(b)(1) (historical and statutory notes).

*In re BDC 56 LLC*, 330 F.3d at 117. The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") further amended § 303 by adding the phrase "as to liability or amount" to §§ 303(b)(1) and (h)(1) following the phrase "bona fide dispute." *See In re Euro-American Lodging Corp.*, 357 B.R. 700, 712 n. 8 (Bankr. S.D.N.Y. 2007).

In support of its petition, Schneider-Valley argues that amendments added by BAPCPA do not significantly alter the definition of "bona fide dispute" under the Second Circuit's 2003 decision, *In re BDC 56 LLC, supra.* In that case, the Second Circuit adopted the Seventh Circuit's objective test, as well as the burden-shifting framework developed by other courts.

- 13 -

Taken together, this means that the petitioning creditor must first establish a *prima facie* case that

no bona fide dispute exists. 330 F.3d at 118.

> Once a prima facie case has been established, the burden shifts to the debtor to
> demonstrate the existence of a bona fide dispute…. "Because the standard is
> objective, neither the debtor's subjective intent nor his subjective belief is
> sufficient to meet this burden," and "[t]he court's objective is to ascertain whether
> a dispute that is bona fide exists; the court is not to actually resolve the dispute."

*Id.* (citations omitted) (quoting *Rimell v. Mark Twain Bank,* 946 F.2d 1363, 1365 (8th Cir. 1991)).

Schneider-Valley has not met its burden of demonstrating that Mountain Dairies is liable

as to any particular amount.  The amounts asserted on the involuntary petition not only included

amounts disputed by Mountain Dairies but amounts payable to a separate Schneider entity (Tr.

72) and due from a corporate entity other than Mountain Dairies (Tr. at 37-38).  Schneider-

Valley argues:

> To the extent that the Debtor does raise a *bona fide* dispute as to the [sic] whether
> it was entitled to price adjustments and credits, Schneider-Valley will request
> leave of Court to amend the Involuntary Petition to assert only the portion of its
> claim that is not subject to *bona fide* dispute.

Response to Debtor's Supplemental Memorandum of Law, ECF Docket No. 18, p. 3 n. 1.

Schneider-Valley glosses over a significant instruction in *In re BDC 56 LLC*, that the Court is to

ascertain whether a bona-fide dispute exists, but "**is not to actually resolve the dispute**." 330

F.3d at 118 (emphasis added). *See also*, *In re DSC, Ltd.*, 486 F.3d 940, 945 (6th Cir. 2007)

("Importantly, the court need not resolve any genuine issues of fact or law; it only must

determine that such issues exist.") (citations omitted); *In re Regional Anesthesia Assocs.*, 360

B.R. 466, 477 (Bankr. W.D. Pa. 2007) ("The outcome of a dispute need not be resolved, only its

presence or absence.").  There is no doubt that the dispute over both the liability and amount of

Schneider-Valley's claim against Mountain Dairies would continue after the entry of an order for

relief.  Schneider-Valley would have this Court find no dispute for the purposes of the threshold

requirement of an undisputed claim and then have this Court resolve multi-faceted disputes over the amount of that claim.

Moreover, *In re BDC 56 LLC*'s definition of "bona fide dispute," has likely been altered by BAPCPA.

> The application of the objective standard has presented courts with considerable difficulty, some of which may diminish with the added language "as to liability or amount." Affirmative defenses to a creditor's claim suggest that a bona fide dispute exists, but the debtor's assertion of a counterclaim that does not go to the merits of the creditor's claim does not necessarily demonstrate a bona fide dispute. Prior to the 2005 amendments, some courts took the position that a debtor's counterclaim disputing the amount of a creditor's claim, and not the legitimacy or the existence of such claim, did not make the creditor's claim the subject of a bona fide dispute. It appears that this result may change as a consequence of the 2005 amendments, since a dispute as to amount is sufficient to disqualify the petitioning creditor.

2 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 303.30[2][b], 303-30 to 303-31 (15th rev. ed. 2006) (footnotes omitted). Thus, after the amendments made by BAPCPA, "disputes as to amount – not just liability – are sufficient to create a bona fide dispute." *Id.* at 303-32. *See also*, *In re Euro-American Lodging Corp.*, 357 B.R. 700, 712 n. 8 (Bankr. S.D.N.Y. 2007) (stating in dicta that the result of the BAPCPA amendment is that "any dispute regarding the amount that arises from the same transaction and is directly related to the underlying claim should render the claim subject to a *bona fide* dispute.") (citations omitted); *In re Regional Anesthesia Assocs.*, 360 B.R. at 469 (citing Collier on Bankruptcy).

The crux of Schneider-Valley's argument is its willingness to make post-petition corrections to its initial claim to prove that, although hundreds of thousands of dollars may be in dispute, at least some amount (though ultimately no definitive amount) above the $13,475 threshold in 11 U.S.C. § 303(b) must not be in dispute. These concessions do not, as Schneider-Valley contends, eliminate the bona fide dispute. Rather, they raise serious concerns over the legitimacy of Schneider-Valley's entire claim. That a claim could have been filed in good faith

when a substantial portion of that claim was the subject of a dispute on its face is untenable.  As noted above, the proof offered by Schneider-Valley was insufficient to establish a sufficient claim even under the objective standard set forth in *In re BDC 56 LLC*.  To Schneider-Valley's insufficient offer of proof, the Court adds other factors, including: (1) the absence of any judgment in Schneider-Valley's favor, (2) no admission of liability as to any amount by Mountain Dairies, (3) Schneider-Valley's inexplicable refusal to enforce the claim in the forum chosen by the parties by written agreement, (4) the fact that the purportedly "undisputed" claim comes after the parties proceeded for two years under an oral agreement while attempting to negotiate a new agreement, and (5) the fact that the involuntary petition was filed immediately after those negotiations ceased.  It is possible that a state court will find that Mountain Dairies is liable to Schneider-Valley in some amount or even the entire amount claimed by Schneider-Valley in the petition.  That possibility is insufficient to support an involuntary petition where, on the record before this Court, the liability, amount, and even the circumstances surrounding the parties' relationship are the subject of substantial dispute.

Finding in Schneider-Valley's favor would encourage plaintiffs in two-party disputes to flock to bankruptcy court in the hopes of a brisk resolution of those disputes.  At the very least, it would legitimize the threat of an involuntary petition and provide plaintiffs with a powerful advantage.  Defendants in two-party disputes would be placed at a significant disadvantage if, facing the stigma of bankruptcy, they were compelled to settle on unfavorable terms.  *See*, *In re BDC 56 LLC*, 330 F.3d 111 at 117-18 ("Congress plainly did not intend to require a debtor to pay a legitimately disputed debt simply to avoid the stigma of bankruptcy.") (quoting *In re Lough*, 57 B.R. 993, 997 (Bankr. E.D.Mich. 1986)) (internal quotation marks omitted).  This

Court is not prepared to endorse a policy that would so disrupt the very fabric of our judicial system.

## II.   __Abstention__

Even if Schneider-Valley were an eligible petitioner under 11 U.S.C. §303, this Court would be compelled to abstain pursuant to 11 U.S.C. §305 because this is essentially[7] a two-party dispute for which the parties have adequate remedies in state court.  The bankruptcy court is not a collection agency.  *See*, *e.g.*, *In re Century Tile and Marble, Inc.*, 152 B.R. 688, 689 (Bankr. S.D. Fla. 1993) (creditors' attorney admonished and sanctioned for "utilizing the bankruptcy court as a collection agency instead of going to state court where collection claims are properly filed"); *In re Glover*, *Inc.*, 43 B.R. 322, 325 n. 9 (Bankr. D. N.M. 1984).

Pursuant to 11 U.S.C. § 305(b)(1):

(a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if--

(1) the interests of creditors and the debtor would be better served by such dismissal or suspension[.]

*In re 801 South Wells Street, L.P.,* 192 B.R. 718, 723 (Bankr. N.D. Ill. 1996) sets forth the following factors for abstention:

(1) economy and efficiency of administration;

(2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court;

(3) whether federal proceedings are necessary to reach a just and equitable solution;

---

[7]     This statement may appear inconsistent because the Court has noted elsewhere that certain amounts asserted are due to, and from, entities that are not present here.  The dispute here appears to be centered around written and oral agreements, with Schneider-Valley and Schneider-Dairy as suppliers, and Mountain Dairies, Star Dairy and White's Dairy as dealers.  Thus, the fact that multiple entities are involved on both sides has complicated Schneider-Valley's attempt to prove undisputed amounts in this involuntary case, but it does not change the fact that the dispute is essentially a dispute between a supplier and a dealer.  Though Schneider-Valley has argued that it is "not the Debtor's only creditor" (Response to Debtor's Supplemental Memorandum of Law, ECF Docket No. 18, p. 2; Tr. at 15-16), Schneider-Valley is the only petitioning creditor, and no other creditor joined in the petition as allowed by 11 U.S.C. § 303(c).

(4) whether there is an alternative means of achieving an equitable distribution of assets;

(5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case;

(6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and

(7) the purpose for which bankruptcy jurisdiction has been sought.

The second factor, the availability of another forum, immediately brings to the Court's mind the forum selection clause contained in the Dealer Supply Agreement, in which the parties designated the Supreme Court of the State of New York, in and for the County of Sullivan "as the place of venue if any litigation occurs between the parties."  In view of this clause, Schneider-Valley has not explained to this Court's satisfaction the "economy and administration" that would justify an involuntary Chapter 7 case and has not articulated the purpose for seeking bankruptcy jurisdiction, the first and seventh factors, respectively.  In connection with the seventh factor, the purpose for seeking bankruptcy jurisdiction, and the third, whether federal proceedings are necessary to reach a just and equitable solution, Schneider-Valley argues that Mountain Dairies "is no longer in business and has apparently sold its most valuable asset, i.e., its customer list, to another milk distribution company." Response to Debtor's Supplemental Memorandum of Law, ECF Docket No. 18, p. 1

> Here, the Debtor is defunct and has engaged in certain transactions that may be avoidable.  If Schneider-Valley or the Debtor's other creditors are forced to obtain a judgment and pursue enforcement of that judgment, there very likely will be nothing left to satisfy such creditors' claims and certain transactions may no longer be avoidable.  Thus, Schneider-Valley cannot obtain adequate relief outside of this Bankruptcy Court.

Id., p. 3.  Although it appears that Mountain Dairies transferred its customer list to Heinchon-Marcus, Schneider-Valley fails to point to any remedy in this Court that would be unavailable in New York state court — the forum contractually bargained for by the parties.  First, Schneider-

Valley alleges a fraudulent transfer, which could be avoided in a New York state court under

New York state law. *See*, *e.g.*, N.Y. Debt. & Cred. Law §§273 (conveyances by insolvents

without fair consideration), 274 (conveyances by persons in business for which remaining

property is an unreasonably small capital), 276 (conveyances made with the intent to defraud),

276-a (attorneys' fees in action to set aside a conveyance made with the intent to defraud).

Schneider-Valley has also failed to explain why it could not seek injunctive relief or the

appointment of a receiver under New York law. Schneider-Valley's avowed purpose in filing

this involuntary petition, to avoid the transfer of Mountain Dairies' customer list to Heinchon-

Marcus strikes the Court as odd. Schneider-Valley is currently conducting business with

Heinchon-Marcus, purportedly using the very customer list that is the target of this dispute, and

the parties apparently agree that Mountain Dairies lost its milk license on April 30, 2007.

In support of its argument against abstention, Schneider-Valley relies on *In re Paper I

Partners, L.P.*, 283 B.R. 661 (Bankr. S.D.N.Y. 2002). In *In re Paper I Partners*, Judge Robert

E. Gerber applied the factors in *801 South Wells*, *supra*, and concluded that abstention was not

warranted in that case for several reasons, including the finding that economy and efficiency

would be served because the alleged debtor's general partner was in New York, the forum

chosen by the 28 petitioning creditors. 283 B.R. at 679. Judge Gerber declined to abstain in that

case because, the petitioning creditors would be forced to "go around the country or the world to

obtain relief, and where assets can be distributed in a pari passu manner," and "races to obtain

judgments" would ensue. 283 B.R. at 679. The case at bar is readily distinguished. In sharp

contrast to the multiple petitioning creditors in *In re Paper I Partners*, Schneider-Valley is the

sole petitioning creditor here. Although both sides have alluded to the existence of other

creditors, no other creditors have been identified as to name or amount due, nor have any other

creditors joined Schneider-Valley in its petition.  Pari passu distribution is therefore not an issue;

races to judgment are not likely in a two-party dispute.  Unlike the alleged debtor above,

Mountain Dairies is not attempting to drag Schneider-Valley to an inconvenient forum.  Rather,

Mountain Dairies is merely seeking to try the case in New York state court pursuant to the

parties' forum selection clause.

**III.**   **Attorneys' Fees**

The Court may, at its discretion, award attorneys' fees under 11 U.S.C. 303(i):

> If the court dismisses a petition under this section other than on consent of all
> petitioners and the debtor, and if the debtor does not waive the right to judgment
> under this subsection, the court may grant summary judgment—
>> (1) against the petitioners and in favor of the debtor for –
>>> (A)  costs; or
>>> (B)  a reasonable attorney's fee; or
>> (2) against any petitioner that filed the petition in bad faith, for –
>>> (A)  any damages proximately caused such filing; or
>>> (B)  punitive damages.

11 U.S.C. 303 (emphasis added).  "Under the terms of the statute, bad faith is not a prerequisite

to an award of costs and attorney's fees under § 303(i)(1)." *In re Bayshore Wire Prods. Corp.*,

209 F.3d 100, 105 (2d Cir. 2000).

> Courts generally hold that the exercise of the court's discretion is based on the
> totality of the circumstances; that there is a presumption that costs and attorney's
> fees will be awarded to the alleged debtor following dismissal of an involuntary
> petition; and that the burden of proof is on the petitioner to justify a denial of
> costs and fees.

*In re Squillante*, 259 B.R. 548, 553-554 (Bankr. D. Conn. 2001).  The Court does not believe that

the record supports a finding of bad faith, but the filing of an involuntary petition under these

circumstances was sufficiently ill-advised to merit the award of reasonable costs attorney's fees

to Mountain Dairies pursuant to 11 U.S.C. § 303(i)(1).  As indicated at the conclusion of the

June 27, 2007 evidentiary hearing, the Court will award such costs and fees only upon separate

application on notice to Schneider-Valley and its counsel.

## **CONCLUSION**

The foregoing is in keeping with the Court's oral ruling following the June 27, 2007

evidentiary hearing and the June 27, 2007 order dismissing the involuntary petition.

Dated: Poughkeepsie, New York
     July 25, 2007                  /s/ Cecelia Morris
                               CECELIA G. MORRIS
                               UNITED STATES BANKRUPTCY JUDGE